# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

GARY DEWAYNE CROSS,　　　　＊
　　　　　　　　　　　　　　＊
　　　Plaintiff,　　　　　　＊　　　**DOCKET NO. _____**
　　　　　　　　　　　　　　＊
v.　　　　　　　　　　　　　＊
　　　　　　　　　　　　　　＊　　　**JURY DEMANDED**
STONEMOR Partners, L.P.　　＊
　　　　　　　　　　　　　　＊
　　　Defendant.　　　　　　＊

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION
## AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Comes now, Plaintiff Gary Cross (hereinafter referred to as "Cross"), and by and through counsel Bowe and Associates, PLLC, and for his Complaint for relief from breach of contract, wrongful termination, hostile work environment, employment discrimination, intentional infliction of emotional distress, negligent infliction of emotional distress, and unfair and deceptive trade practices, respectfully states as follows:

## I.

## PARTIES

1. Cross is a resident of Hamilton County, Tennessee.

2. On information and belief, StoneMor Partners, L.P. ("StoneMor") is a corporation organized under the laws of the State of Pennsylvania, headquartered in Levittown, Pennsylvania with its principal place of business located at 4621 Shallowford Road, Chattanooga, Tennessee.

## II.

## JURISDICTION

3. This Court has jurisdiction of the action under 42 U.S.C. §2000e et seq. 29 U.S.C. 2000ff et seq. and 28 U.S.C. §1331 and 28 U.S.C. §1332.

Case 1:11-cv-00348-CLC-SKL   Document 1   Filed 11/28/11   Page 1 of 11   PageID #: 1

## III.

## VENUE

4. Venue is proper before this Court pursuant to 28 U.S.C §1391(b).

## III.

## FACTS

5. Cross is a veteran of the United States Navy.

6. Cross was a successful business owner but left it behind to raise his son, for whom he obtained full custody.

7. In 2003, Cross was hired at StoneMor Partners, LP's Lakewood Memory Gardens East in Chattanooga, Tennessee.

8. Cross was quickly promoted to Assistant Manager.

9. During the next three (3) years, Cross performed extremely well as a salesman and as a manager. Cross broke sales records, set sales standards, and was routinely and repeatedly commended for his performance.

10. At no time during those three (3) years was Cross disciplined, written up, or otherwise admonished for any poor conduct.

11. In fact, Cross performed so well that he was transferred to Lakewood South as Manager in 2006. From 2006 until 2009, Cross met sales goals and budget goals under circumstances which confounded lesser managers.

12. Cross was the top sales producer at Lakewood East in 2006 and the Southern Region in 2006. Cross repeated these feats in March 2006, August 2007, December 2007, April 2008, July 2008, September 2008, December 2008, ultimately receiving the Sales Management Award Lakewood South in 2008.

13. Cross received numerous letters of commendation and praise from customers and StoneMor alike. **See Exhibit A.**

14. Another employee had a sexual relationship with Cross. She was adamant about continuing the relationship even though Cross tried to end it.

15. Other StoneMor employees had sexual relationships with co-workers and were not disciplined or terminated. Kristyn Coppock and Mark Breedwell were caught by an angry customer who had been to the facility to put flowers on her husband's crypt. Despite the report from the customer, witnessed by at least one (1) StoneMor employee, neither Coppock nor Breedwell were terminated.

16. Angry and frustrated she threatened to end my career by taking unspecified action to "throw me under the bus."

17. I was never disciplined for any inappropriate conduct. Nor was I subjected to a performance review or reprimand for any issue while employed at StoneMor.

18. Immediately thereafter, Dave Boersma ("Boersma") and Robert Cooper ("Cooper") contacted me. They told me to report to rehabilitation.

19. When Boesrma told me to pack my things and head to rehabilitation, I was not tested for drugs, nor was I screened for alcohol. At that time, I had not failed a drug screen, nor had I failed an alcohol test. Moreover, I had not been reprimanded for drug or alcohol use. As a result, I was confused as to why I needed to pack my things and go to rehabilitation.

20. I was hurt by its portent or Boersma's statement and his manner.

21. I later learned that Boersma told the employee I had a relationship with (Renee Dailey ("Dailey")) that I was sent to rehabilitation and that she shouldn't worry about me – I "would be taken care of."

22. When I returned to work, I was demoted to sales counselor and transferred back to Lakewood East. Again, I was demoted with no explanation or performance reprimand.

Case 1:11-cv-00348-CLC-SKL   Document 1   Filed 11/28/11   Page 3 of 11   PageID #: 3

23. After returning as a sales counselor, I was sent back to Lakewood South as a co-manager with Dailey and remained in that capacity until December 2009.

24. I was again sent back to rehabilitation in January 2010, demoted again to sales counselor, and transferred to Lakewood East where Greg Martin was the manager. I worked through February 2010 and was fired by telephone in March. Greg Martin called me to dismiss me.

25. Within five minutes of Greg Martin's telephone call, StoneMor's Human Resources Department called to tell me to report to rehabilitation for thirty (30) days inpatient treatment and that I had not been fired.

26. Confused and angry, I attempted to quit; even requesting my 401k monies from Mass Mutual, but was denied.

27. StoneMor first sent Mass Mutual a termination date notice.

28. Mass Mutual reported that StoneMor put a stop to the payment process as Cross "was not going to be terminated." **See Exhibit B.**

29. For an additional fifteen (15) days, StoneMor kept me on the rolls as an employee, continued to treat Cross as though he had violated some company policy without informing me of the alleged violation or the conduct which resulted in my repeated transfers and in my repeated demotions. At some point on or about March 30, 2010, StoneMor decided to report to Mass Mutual a termination date for Cross.

30. All this transpired despite Cross' stellar performance while with StoneMor. Cross is aware of no performance evaluations which refer to any drug or alcohol problems, or to any conduct which resulted in demotion. If any are purported to exist they have been manufactured by StoneMor and its representatives.

31. Indeed, other employees, who actually have violated company policy were not treated as was Cross. For example, Taylor Fred Perkins was an employee who was under the

influence of some substance (he later said it was his wife's painkillers), operated as a grounds crew worker coming into contact with customers and vendors on a frequent basis operating a backhoe and mowers, and almost killed a worker from Wilbert Vault Company. The Wilbert Vault Company worker was wedged between the vault and the wall of the grave. Taylor Fred Perkins was never reported or sent to rehabilitation. Indeed, on information and belief, Taylor Fred Perkins had, immediately prior to the incident, been charged with possession of a controlled substance and driving under the influence of alcohol or drugs. Despite this arrest and subsequent criminal disposition, StoneMor never treated Taylor Fred Perkins as it treated Cross – sending him to rehabilitation or terminating his employment.

32. From March 2010 until June 2010, Cross received phone calls from Greg Martin and Dailey which were harassing as Cross could not understand why StoneMor fired him, purportedly didn't fire him, and then, without warning, rhyme or reason, sent him to rehabilitation.

33. Cross also did not understand why StoneMor and its 401k company, Mass Mutual failed to release his monies from my 401k when asked. It was explained to Cross by Mass Mutual. **See Exhibit B.**

34. In fact, the 401k company released Cross' money to his personal bank account – totaling Twenty-Five Thousand Six Hundred One Dollars and Thirty-Seven Cents ($25,601.37). Yet, prior to the close of business the next day, the money was taken back, withdrawn from Cross' personal banking account causing injury through bounced checks including, but to limited to his utilities.

35. During this entire time, StoneMor management repeatedly and continuously discussed Cross' employment, Cross' situation through StoneMor's eyes with other employees telling them Cross "had been sent to rehab for alcohol abuse."

# IV.

## CLAIMS FOR RELIEF

36. Cross re-alleges and incorporates each and every allegation made in Paragraph 1 through Paragraph 35 of the Complaint herein by reference.

37. Defendant StoneMor, has discriminated against Cross, on the basis of his gender, male, in violation of § 703(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1), among other ways, by:

38. (a) subjecting Cross to sexual harassment during his employment with StoneMor, which adversely affected the terms, conditions and privileges of his employment; and (b) failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment of Cross.

39. Cross timely filed a charge of discrimination with the EEOC, EEOC Charge No.494-2010-01887, in which he alleged that he had been subjected to, among other things, harassment on the basis of his sex and retaliation during his employment with StoneMor pursuant to § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, the EEOC investigated Cross' charge. Since the EEOC was behind on processing charges, some time passed before the EEOC was able to notify Cross that it began an investigation into his claims of discrimination. The EEOC subsequently sent Cross Notice of Right to Sue recommending settlement/mediation. *Attached hereto as Exhibit C is Cross' Notice of Right to Sue.*

40. Defendant StoneMor, has discriminated against Cross, on the basis of age in violation of § 703(a) of Title VII Age Discrimination in Employment Act of 1967 and the Civil Rights Act of 1964, as amended, 29 U.S.C. § 621, among other ways, by:

41. (a) subjecting Cross to harassment and discriminatory treatment as a result of his age during his employment with StoneMor, which adversely affected the terms, conditions and privileges of his employment; and

42. (b) failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment of Cross.

43. Cross timely filed a charge of discrimination with the EEOC, EEOC Charge No. 494-2010-01887, in which he alleged that he had been subjected to, among other things, harassment and discrimination on the basis of age during his employment with StoneMor pursuant to the Age Discrimination in Employment Act of 1967 and § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, the EEOC investigated Cross' charge. Since the EEOC was behind on processing charges, some time passed before the EEOC was able to notify Cross that it began an investigation into his claims of discrimination. The EEOC subsequently sent Cross Notice of Right to Sue recommending settlement/mediation. ***Attached hereto as Exhibit C is Cross' Notice of Right to Sue.***

44. Cross re-alleges and incorporates each and every allegation made in Paragraph 1 through Paragraph 43 of the Complaint herein by reference.

45. Defendant StoneMor, has discriminated against Cross, on the basis of StoneMor's release of Cross' confidential genetic information to co-workers and fellow employees regarding alcohol abuse and rehabilitation, in violation of Title II of the Genetic Information Non-Discrimination Act of 2008, 42 U.S.C. § 2000ff et seq. and 29 C.F.R. Part 1635 et seq., as amended, among other ways, by:

46. (a) subjecting Cross to the release of his protected, confidential genetic information during his employment with StoneMor, which adversely affected the terms, conditions and privileges of his employment; and

(b) failing or refusing to take appropriate action to remedy the effects of the discriminatory treatment of Cross.

47. Cross timely filed a charge of discrimination with the EEOC, EEOC Charge No. 494-2010-01887, in which he alleged that he had been subjected to, among other things, disclosure of his confidential and protected genetic information and retaliation during his employment with StoneMor pursuant to Title II of the Genetic Information Non-Discrimination Act of 2008, as amended.

48. The EEOC investigated Cross' charge. Since the EEOC was behind on processing charges, some time passed before the EEOC was able to notify Cross that it began an investigation into his claims of discrimination. The EEOC subsequently sent Cross Notice of Right to Sue recommending settlement/mediation. *Attached hereto as Exhibit C is Cross' Notice of Right to Sue*

49. All conditions precedent to the filing of this suit have been performed or have occurred.

**WHEREFORE**, Cross prays that the Court grant the following relief:

(a) Enjoin the defendant from failing or refusing to:

(i) provide sufficient remedial relief to make whole Cross for the loss he has suffered as a result of the discrimination against him as alleged in this complaint; and

(ii) take other appropriate nondiscriminatory measures to overcome the effects of the discrimination.

(b) Award compensatory damages to Cross as would fully compensate him for injuries caused by the defendant's discriminatory conduct directly or through the conduct of its employees, pursuant to and within the statutory limitations of § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

(c) Award compensatory damages to Cross as would fully compensate him for injuries caused by the defendant's negligent retention of its employee.

(d) Award such additional relief as justice may require, together with Cross' costs and disbursements in this action.

## JURY DEMAND

50. Cross hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

51. Cross adopts and incorporates all the preceding paragraphs as if fully re-alleged herein.

52. StoneMor negligently caused severe emotional distress and physical injury to Cross.

53. StoneMor offended the generally accepted standards of decency and morality.

54. Cross suffered emotional distress and personal injuries.

55. StoneMor's conduct is causally connected to Cross' emotional distress.

## PUNITIVE DAMAGES

56. Cross adopts and incorporates, by reference, all of the preceding paragraphs as if fully set forth hereunder.

57. StoneMor acted, and/or failed to act, in conscious disregard of, or indifference to, a known risk of harm from their activities constituting willfulness, wantonness or recklessness.

58. StoneMor had a subjective realization of the risk of harm caused by its acts and/or failures to act.

59. StoneMor knew, or should have known, of circumstances which would bring home to the realization of the ordinary reasonable person, the harmful character of its acts and/or failures to act.

## DAMAGES

60. Cross adopts and incorporates all the preceding paragraphs as if fully re-alleged herein.

61. Cross seeks general, compensatory, punitive, and treble damages in an amount to be proven at trial, but exceeding the jurisdictional limit set pursuant to statute and rule.

### V.

### PRAYER FOR RELIEF

**WHEREFORE**, Cross prays judgment against Defendant as follows:

1. For general damages for severe emotional distress and mental suffering in excess of the sum of $500,000 or to be determined by a duly constituted jury of Plaintiff's peers;

2. That the Court duly constitute and impanel a jury to hear this matter.

3. Medical and related expenses in excess of $25,000.00;

4. For lost wages in excess of $80,000.00;

5. For costs of suit incurred;

6. For punitive damages;

7. For treble damages;

8. For attorneys fees where authorized by Tennessee law; and

9. For such other and further relief as the court may deem just and proper.

RESPECTFULLY SUBMITTED,

BOWE & ASSOCIATES, PLLC

By: _____

Curtis L. Bowe, III, Esq. (BPR No. 017037)
*Attorney for Plaintiff*
707 Georgia Avenue, Suite 302
Chattanooga, Tennessee 37402
Telephone: 423.475.6070
Facsimile: 423.475.6072


## VERIFICATION

STATE OF TENNESSEE     )
     )
COUNTY OF HAMILTON     )

     Gary Dewayne Cross, being first duly sworn, makes an oath that the statements made in his foregoing Complaint is true as of his own knowledge and belief and his Complaint is not made out of levity or in collusion with the Defendant, but in sincerity and truth for the causes mentioned in the Complaint and that he is justly entitled to the relief herein sought.

_____
Gary Dewayne Cross


WITNESS my hand this the _____28th_____ day of _____November_____, 2011.

_____
NOTARY PUBLIC
My Commission Expires: ___5/6/14___